IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES *ex rel.* JOHN RECTOR, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BON SECOURS RICHMOND HEALTH CORPORATION, *et al.*, <br><br> Defendants. | Civil Action No. 3:11-CV-38 |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on a Motion for Relief Pursuant to the Court's Inherent Power by Defendants Bon Secours Health System, Inc. ("BSHS"), Bon Secours Richmond, LLC, ("BSR") and Bon Secours Richmond Health System ("BS Richmond") (collectively, "Defendants" or "Bon Secours") (ECF No. 59). For the reasons below, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

In or about 2006, Bon Secours implemented a program ("Concierge Service") to provide concierge services to BS Richmond-affiliated and non-affiliated physicians. (Compl. ¶ 4). Through the Concierge Service, Bon Secours hired patient-physician practice liaisons ("Concierges") to provide a wide array of services to doctors who referred their patients to Bon Secours for diagnostic tests. (*Id.* ¶¶ 4, 6). Bon Secours's Concierge Service was designed to alleviate personnel and financial burdens on referring doctors' offices by scheduling patients, obtaining insurance pre-authorizations, communicating with patients

1

and the testing facilities, collecting patient co-payments and deductible payments, and performing additional tasks on behalf of the referring physicians. (*Id.* ¶ 6).

From in or about 2007 through in or about June 2009, BS Richmond retained a temporary employment agency named Zentech, LLC ("Zentech"), to provide personnel for the Concierge Service. (Rector Decl. ¶ 6). Zentech was co-owned by Stephen Bradley and T. Wade Williams. (*Id.* ¶ 2). Williams was also a Bon Secours manager who was assigned to develop and run the Concierge Service. (*Id.* ¶¶ 2, 4). Bradley and Williams were domestic partners, and they ran Zentech out of their home using two personal computers and a laptop. (*Id.* ¶ 2).

From in or about August 2007 to in or about November 2007, Relator John Rector ("Rector") was employed at Zentech. (*Id.* ¶ 2). Rector was directed to prepare and maintain logs of the patients handled by Zentech on behalf of Bon Secours in order to keep track of the progress of the diagnostic tests and procedures ordered, and to facilitate billing. (*Id.* ¶ 9). In the fall of 2007, Rector was hired by BS Richmond to be a Concierge. (*Id.* ¶ 11).

Subsequently, Mr. Williams was fired by BS Richmond in or about February 2009. (*Id.* ¶ 12). Later, Mr. Bradley was involved in an automobile accident that paralyzed and totally incapacitated him. (*Id.* ¶ 13). Williams subsequently moved out of his residence in or about June 2009 and abandoned the Zentech business, including computers containing sensitive information from past dealings with BS Richmond. (*See id.* ¶ 14). BS Richmond took no steps to secure or recover the information and documentation from Zentech despite knowledge that the business had closed. (*Id.* ¶ 16). After Zentech closed, Rachel Gill, a former Zentech employee and Mr. Bradley's sister, became concerned that sensitive computers and other documentation remained in the abandoned house. (*Id.* ¶ 17). She

subsequently stored Zentech-related computers and paperwork ("Data") in her home. (*Id.* ¶ 17).

Defendants represent that Rector was fired from his position at BS Richmond on January 5, 2010. (Cook Decl. ¶ 15). On January 18, 2011, Rector filed a *qui tam* complaint under seal against the Defendants. In or about March 2011, during a visit to Richmond, Rector's counsel met with Ms. Gill, who had been in contact with Rector. (Rector Decl. ¶ 18). Ms. Gill provided electronic documents and emails to counsel from her backup of a Zentech laptop. (*Id.* ¶ 19). Ms. Gill later provided two Zentech desktop computers and a laptop backup in or about May through June 2013. (*Id.* ¶ 21). The computers were transported to the offices of DurretteCrump in Richmond, Virginia after being imaged by an information technology specialist. (*Id.* ¶ 23).

Rector represents that, while there were some legible documents on the computers that were relevant to his Complaint, the majority of the documents appeared to be fragments or otherwise unreadable. (*Id.* ¶ 22). Defendants allege that the computers may contain patient logs consisting of:

> a compilation of highly confidential Bon Secours information[, which] memorializes Bon Secours' interactions with hundreds, if not thousands, of patients, clinicians and health insurers over a 12-month period, including: (1) the date Bon Secours received a referral of the patient; (2) the patient's name; (3) the patient's Social Security number; (4) the medical procedure to be performed on the patient; (5) the date the procedure was scheduled; (6) the date and time the procedure was performed; (7) the Bon Secours facility where the procedure was performed; (8) the physician that referred the patient for the procedure; (9) the attending nurse; (10) the health insurance carrier that paid for the procedure; and (11) if necessary, the code for that insurance company's prior authorization of the procedure.

(Cook Decl. ¶ 27). Defendants also assert that the Zentech computers may contain trade secrets. (Defs.' Mem. Supp. Mot. for Relief 9).

On April 19, 2013, the case was unsealed after the United States and the Commonwealth of Virginia declined to intervene. On August 5, 2013, Rector filed his First Amended Complaint that, among other things, added information about specific false claims, including a spreadsheet prepared by Rector in the course of his employment and listing patients whose procedures Rector had handled. (*See* Rector Decl. ¶¶ 9, 17).

Defendants represent that their counsel, John Brennan and Michael Paddock, spoke with Eric Jaso and Wyatt Durrette, counsel for Rector, about the source of the information in the Amended Complaint on August 22, 2013. (Defs.' Mem. Supp. Mot. for Relief 7).

On September 17, 2013, Rector filed his Second Amended Complaint, changing three defendants and adding ten John Doe corporations. On September 23, 2013, Defendants identified Ms. Gill as the person that provided the Data. (Defs.' Mem. Supp. Mot. for Relief 7-8). Defendants' counsel immediately requested that Rector and his counsel:

> (1) refrain from destroying all such data in their possession; (2) return all physical and paper copies of such data to Bon Secours; (3) identify all such data that they had shared with one another; and (4) agree to a computer forensic process by which Bon Secours could ensure that it had recovered all such data and removed all such data from Rector's and Gill's/Zentech's computers and any other devices.

(*Id.*, Ex. B). On September 30, 2013, Rector filed a Motion for Protective Order to govern the disclosure and handling of materials containing "protected health information" under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). *See* 45 C.F.R. § 160.103. On October 2, 2013, Defendants responded with a Motion to Seal sensitive protected health information in Rector's Amended Complaint, Second Amended Complaint and certain exhibits. On October 21, 2013, the Parties entered a Consent Protective Order governing the disclosure and handling of materials containing protected health information under HIPAA. (ECF No. 55).

Defendants filed their Motion for Relief Pursuant to the Court's Inherent Power on October 25, 2013. Defendants move the Court to order Rector and his attorneys to: (1) return all BS Richmond data (physical or electronic) that he possesses; (2) permit a computer forensic consultant chosen by Bon Secours to image any and all computers or data devices in Rector's possession, custody, or control that contain the BS Richmond data at issue; (3) verifiably delete such data from all such computers or data devices; and (4) individually prepare affidavits identifying every item of BS Richmond data in their possession, custody, or control. Further, Defendants move the Court to grant such relief as the Court deems just and appropriate.

Rector filed his Opposition on November 8, 2013. Defendants filed their Reply on November 14, 2013. A motions hearing on the matter was held on December 12, 2013 at 10:30 a.m.

## II. Analysis

### A. The Court's Authority to Issue the Consent Protective Order

"[T]he use of protective orders, particularly stipulated protective orders, is encouraged under the Federal Rules and this Court's Local Rules." *Waterkeeper Alliance, Inc. v. Alan & Kristin Hudson Farm*, 278 F.R.D. 136, 141 (D. Md. 2011). Rule 26(c) governs protective orders and states, among other things, that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). At its discretion, a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* The Second and Ninth Circuit have held, however, that courts lack authority under Rule 26(c) to issue protective orders regarding documents obtained

Case 3:11-cv-00038-JRS Document 91 Filed 01/06/14 Page 6 of 12 PageID# 1350

wholly outside of the discovery process. *See Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1080-81 (9th Cir. 1988) (regarding documents obtained in a separate action brought by another person against the same defendant); *Bridge C.A.T. Scan Assocs. v. Technicare Corp.,* 710 F.2d 940, 945-46 (2d Cir. 1983) (regarding documents obtained before the discovery process began). Accordingly, Rule 26(c) may not be applicable in this dispute.

The Court may, however, appeal to its power to issue protective orders pursuant to its "inherent authority to control and preserve the integrity of its judicial proceedings." *In re Shell Oil Refinery,* 143 F.R.D. 105, 108-09 (E.D. La. 1992). District courts have issued protective orders with respect to documents obtained outside the normal discovery process pursuant to their inherent authority. *See, e.g.*, *Cabotage v. Ohio Hosp. for Psychiatry, LLC*, No. 2:11-CV-50, 2012 WL 3064116, at *3 (S.D. Ohio July 27, 2012) (cataloguing cases); *see also In re Shell Oil Refinery,* 143 F.R.D. at 109.

On October 18, 2013, the Parties filed a Consent Protective Order pursuant to Rule 26(c) and Local Rules 5 and 7.[1] Both Parties seem to agree that the Data was obtained outside of this Court's discovery processes. Pursuant to Second and Ninth Circuit precedent, *In re Shell Oil Refinery*, and because Rule 26 does not authorize a district court to issue protective orders with respect to documents obtained through means other than the Court's discovery processes, the Court's Protective Order should reflect that it was entered pursuant to the Court's inherent authority to control and preserve the integrity of its judicial proceedings.

---

[1] Local Rule 5 governs the designation and handling of documents under seal. *See* E.D. Va. Loc. Civ. R. 5. Local Rule 7 generally governs pleadings, motions, continuances, and orders. *See* E.D. Va. Loc. Civ. R. 7.

### B.  The Court's Power to Grant the Relief Requested

Defendants now move the Court to exercise its inherent powers to grant them relief including, but not limited to: compulsion of the Data, a forensic examination, and corresponding affidavits. This Court has various judicial powers to sanction inappropriate conduct with respect to discovery matters. These powers are typically grounded in local district court rules and Federal Rules of Civil Procedure 26 and 37. *See* Fed. R. Civ. P. 26(g), 37; Charles Alan Wright & Arthur R. Miller, 5A Fed. Prac. & Proc. Civ. § 1336 (3d ed. 2013). As stated previously, while this Court has defined power in the Federal Rules of Civil Procedure to govern the discovery process, the Rules do not extend to documents obtained outside the discovery process. Where bad faith conduct in the course of litigation can adequately be sanctioned under the Rules, a court should rely on Rules rather than its inherent power. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

However, in addition to its prescribed powers, the Court has the inherent power to use sanctions to "impose order, respect, decorum, silence, and compliance with lawful mandates." *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993). Where neither "statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Id.* But, such power should be exercised with restraint and caution because it is not regulated by Congress or the people and is particularly subject to abuse. *Id.* at 462. Additionally, "a finding [that] counsel's conduct . . . constituted or was tantamount to bad faith . . . would have to precede any sanctions under the Court's inherent powers." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 (1980); *see also Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.,* 982 F.2d 363, 368 (9th Cir. 1992) (holding that a district court has the discretion to impose sanctions based in its inherent power "to make discovery and

evidentiary rulings conducive to the conduct of a fair and orderly trial."); *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 497 (D. Md. 2000).

Rector characterizes Defendants' Motion as an attempt to enforce HIPAA. Rector argues, in a roundabout way, that the Court has no "inherent" power to grant Defendants' Motion and that any power to compel the return of the Data stems from HIPAA. Further, Rector argues that HIPAA does not provide an applicable private right of action for the return of protected health information possessed by a third party.

Rector is correct in his assertion that HIPAA does not provide a private right of action. *See, e.g.*, *Cabotage*, 2012 WL 3064116, at *3 ("HIPAA does not vest this Court with jurisdiction to impose the remedy [the defendant] seeks. [The defendant], in seeking return of the documents at issue, is 'effectively seeking to enforce' HIPAA.") (citations omitted). However, despite Rector's characterization of Defendants' Motion as an attempt to enforce HIPAA, Defendants have not explicitly asserted a private right of action under HIPAA. This Court undoubtedly has the inherent power to grant the remedy sought by Defendants. *See id.* ("This Court does, however, possess the inherent authority to issue an order addressing Plaintiff's expressed intention to utilize the documents at issue in this case, especially in light of the fact that she obtained these documents outside of this Court's discovery process.").

### C. The Issue of Mootness

Rector argues that the Consent Protective Order entered in this action renders Defendants' demand for judicial intervention moot because the Court can enforce any breach of the Order that might correspond to violations of patient privacy, whether under HIPAA or state law.

Defendants rebut by arguing that the Consent Protective Order does not moot Defendants' Motion because Paragraph 6 of the Protective Order (captioned "No Admission or Waiver") explicitly and purposefully preserves each Party's ability to argue that improperly obtained data should be returned to its lawful owner.

The Court finds that the Parties' liability regarding potential violations of patient privacy under HIPAA or state law is not dispositive of Defendants' Motion for Relief. Further, the Protective Order does not preclude Defendants from moving the Court to issue sanctions.

### D. Whether Rector's Conduct Warrants Sanctions
#### i. Legal Standard

The Fourth Circuit has not yet decided the precise burden of proof in sanctions cases. *Suntrust Mortg., Inc. v. AIG United Guar. Corp.*, No. 3:09-CV-529, 2011 WL 1225989, at *20 (E.D. Va. Mar. 29, 2011), *aff'd sub nom. Suntrust Mortg., Inc. v. United Guar. Residential Ins. Co. of N.C.*, 508 F. App'x 243 (4th Cir. 2013) (citing *Glynn v. EDO Corp.,* No. JFM-07-01660, 2010 WL 3294347, at *2 (D. Md. Aug. 20, 2010). However, a court's exercise of its inherent power is reserved for serious misconduct. *Id.* at *19-20 (listing a court's inherent power to remedy a host of abuses of judicial process). A court's inherent power to impose sanctions is almost always implicated where misconduct is something "more egregious than that required for other types of sanctions." *Sanford v. Virginia*, 689 F. Supp. 2d 802, 813 (E.D. Va. 2010); *see also Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1118 (1st Cir. 1989). Another type of act that would necessitate a court's application of its inherent power to impose sanctions is where a party was so negligent in its conduct that its actions resulted in severe prejudice such that a party is rendered unable fairly to prosecute its claim or to

9

present its defense. *AIG United Guar. Corp.*, 2011 WL 1225989, at *20. Lastly, a party must show that misconduct occurred by "clear and convincing" evidence, as opposed to by a mere preponderance in order for the court to exercise its inherent power to sanction. *See Glynn*, 2010 WL 3294347, at *2.

        ii. <u>Whether Rector's Conduct Constitutes Bad Faith as Improper Self-Help Discovery</u>

Self-help discovery claims typically arise where a party receives privileged or confidential information that has been misappropriated by an employee or former employee of an employer and the party attempts to utilize the information to make out a prima facie case. *See, e.g., Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008) (employee misappropriated information while working for the defendant and then brought suit under Title VII); *Glynn*, 2010 WL 3294347, at *4-5 (listing cases where employees obtained potentially confidential or privileged information in the possession of an employer through acts of theft); *In re Shell Oil Refinery*, 143 F.R.D. at 108-09 (finding self-help discovery where plaintiffs' attorneys received documents owned by a defendant employer through a third-party that was currently employed by defendant). Also, self-help discovery claims may be asserted where one party's attorneys misappropriate confidential information in the possession of a defendant employer. *See, e.g.*, *Perna v. Elec. Data Sys., Corp.*, 916 F. Supp. 388, 392 (D.N.J. 1995) (finding self-help discovery where plaintiff's counsel improperly gained access to employer documents and photocopied them).

Here, Rector has gained possession of Zentech computers containing, in part, information shared by Bon Secours and Zentech. The Data is non-public, Bon Secours had no expectation of sharing the information with the public; and the Data likely contains Bon

Secours's patient information, business dealings with affiliated entities, and other sensitive information that would likely not be reachable by Rector in the normal course of discovery. While dissimilar in some ways to the self-help discovery in *Glynn*, *Niswander*, and *In re Shell Oil Refinery*, Rector's actions constitute an unfair litigation tactic and a type of self-help discovery. It is true that the FCA contemplates whistleblower possession of documents obtained from employers that evidence fraud upon the government. *See Glynn*, 2010 WL 3294347, at *2 n.4. However, the FCA does not permit whistleblowers to have carte blanche to acquire such information in any way they deem necessary. *See id.* at *3-4.

The Court finds that Defendants are likely to be prejudiced by Rector's self-help discovery because Rector possesses an indiscriminate amount of data and documents that may contain information not reachable through the discovery process. It is difficult to determine whether the Data is central to the matter at hand because the Court is unaware of the exact content of the Data. However, the Data at issue undoubtedly has some connection to the lawsuit because it presumably evidences various aspects of Defendants' alleged Concierge Service and related dealings with other companies. This prejudice has the potential to negatively affect the efficacy of these proceedings.

The Court, however, declines to decide the merits of any potential legal claims related to Rector's possession of the Data because such determinations are not ripe. *See Glynn*, 2010 WL 3294347, at *8 ("[T]his Court should not impose a sanction that deprives Glynn of his right to have this dispute resolved on the merits unless absolutely necessary."). Additionally, the Court notes that neither party asserts a claim of privilege or confidentiality under Rule 26 with regard to the Data or any database that may contain the Data. As such, these arguments will not be reached by the Court.

### III. CONCLUSION

For the aforementioned reasons, the Court GRANTS IN PART and DENIES IN PART the Motion.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record. An appropriate order shall issue.

> _____/s/_____
> James R. Spencer
> United States District Judge

ENTERED this \_\_6th\_\_\_\_\_ day of January 2014.